IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE D. SCHREANE, | : | CIVIL ACTION NO. **3:CV-13-1057** |
| | : | |
| Plaintiff | : | |
| | : | (Judge Caputo) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| WARDEN JEFF THOMAS, *et al.*, | : | |
| | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On April 23, 2013, Plaintiff, Clarence D. Schreane, formerly a prisoner confined at USP-

Lewsiburg, and now a prisoner confined at the Federal Correctional Center ("FCC Allenwood")

located in White Deer, Pennsylvania, filed, *pro se,* another *Bivens*[1] civil rights action, pursuant to

28 U.S.C.  § 1331, in the United States District Court for the Middle District of Pennsylvania.  (Doc.

1).  Plaintiff attached several Exhibits to his 47-page handwritten Complaint.  Plaintiff's Complaint

contains his constitutional claims as well as legal arguments with case cites regarding his claims.

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91
S.Ct. 1999 (1971).  Plaintiff's action  falls within 28 U.S.C. § 1331 ("The district courts shall
have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of
the United States." (Emphasis added).

As Plaintiff indicates, this is a *Bivens* action since he seeks monetary damages from federal
officials for alleged violations of his constitutional rights. *See Oriakhi v. Wood*, 2006 WL 859543, *
1, n. 1 (M.D. Pa.); *Conway v. Lindsay*, 2009 WL 1956282 (M.D. Pa.).  Plaintiff also indicates that he
is in the Special Management Unit ("SMU") at USP-Lewisburg.  (Doc. 29).

We note that Plaintiff Schreane has filed at least two prior civil rights actions with
this Court, namely, Civil Nos. 10-1765 and 11-613, M.D. Pa. Plaintiff has also recently filed
a §2241 habeas petition with this Court, Civil 13-1643, M.D. Pa.  Plaintiff's other cases he
filed with this Court are closed.

Plaintiff also filed two Motions to proceed *in forma pauperis* since his first Motion was not on the proper form. (Docs. 2 & 5). Plaintiff's Complaint raises procedural due process, Eighth Amendment denial of medical care regarding kidney stones, and denial of access to the courts claims in violation of the United States Constitution. (Doc. 1). As relief, Plaintiff requests damages in the amount of five million dollars. (*Id.*). Plaintiff sues all Defendants, who are employees of the U.S. Bureau of Prisons ("BOP") only in their individual capacities.

Plaintiff names the following 12 Defendants: Warden Jeff Thomas; Mr. Chambers, Disciplinary Hearing Officer ("DHO"); F. Entzel, Captain; Correctional Officer ("CO") Barbella; Ms. Heath, Special Investigation Agent ("SIA"); CO Shivery; Mr. Jordan, DHO; Mr. Brown, Health Services Administrator ("HSA"); CO R. Haines; Jeff Campbell, BOP Southeast Regional Office Attorney; unnamed BOP Administrative Remedy Coordinator, Southeast Regional Office; and Harrell Watts, Administrator for BOP National Inmate Appeals.

On May 7, 2013, the Court issued an Order and granted Plaintiff's Motions for Leave to Proceed *In Forma Pauperis* and directed service of Plaintiff's Complaint on Defendants. (Doc. 8). The Summons was issued and the 11 named Defendants were served. (Docs. 13-22). Unnamed Defendant BOP Administrative Remedy Coordinator, Southeast Regional Office, was not initially served since Plaintiff failed to identify this Defendant.

On July 22, 2013, all 12 Defendants jointly filed a Motion to Dismiss and for Summary Judgment, pursuant to Fed.R.Civ.P. 12(b) and 56(b). **(Doc. 24)**. Counsel for Defendants indicated in the Motion that Defendant unnamed BOP Administrative Remedy Coordinator, Southeast Regional Office was Craig Simmons. Thus, it appears that counsel for Defendants is representing

Defendant Simmons and that service on this Defendant has been made.[2]  On August 5, 2013,

Defendants filed a Motion for an extension of time to file their support brief regarding their Doc. 24

motion and Statement of Facts.  (Doc. 26). On August 6, 2013, Plaintiff filed a Brief in Opposition

to Defendants' Motion to Dismiss and for Summary Judgment which was premature since

Defendants had not yet filed their support brief and Statement of Facts.  (Doc. 27).  On August 7,

2013, we granted Defendants' Motion for an extension of time to file their support brief regarding

their Doc. 24 Motion and Statement of Material Facts by August 19, 2013.  (Doc. 28).  On August

14, 2013, Plaintiff filed a Motion to Appoint Counsel. (Doc. 29).  On August 16, 2013, Defendants

timely filed their  Brief in Support of their Motion to Dismiss and for Summary Judgment and, their

Statement of Material Facts ("SMF") with Exhibits.  (Docs.  33, 34 & 34-1 to 34-3).

On August 21, 2013, we issued a Memorandum and Order denying Plaintiff's Motion to

Appoint Counsel.  (Doc. 35).

On September 12, 2013, Plaintiff filed a second Brief in Opposition to Defendants'  Motion

to Dismiss and for Summary Judgment.[3]  (Doc. 36). Also, on September 12, 2013, Plaintiff filed a

Motion for Reconsideration of the Court's Doc. 35 Order denying his Motion to Appoint Counsel.

(Doc. 37).   On September 13, 2013, Plaintiff filed a 5-page  handwritten "Addendum"  with

[2]We  directed the Clerk of Court to have the docket reflect the name of Defendant
BOP Administrative Remedy Coordinator, Southeast Regional Office  as Craig Simmons.

[3]Since Plaintiff Schreane's first Brief in Opposition to Defendants'  Motion to Dismiss
and for Summary Judgment (Doc. 27) was premature and since Plaintiff filed a second Brief
in Opposition to Defendants' Motion to Dismiss and for Summary Judgment (Doc. 36) and
an Addendum with Exhibits, we will only consider Plaintiff's second Brief and Addendum.

attached Exhibits addressing the exhaustion issue regarding his claim challenging the DHO's August 13, 2012 decision finding Plaintiff committed prohibit acts, which is a supplement to his Doc. 36 opposition brief to Defendants' Doc. 24 Motion to Dismiss and for Summary Judgment. (Doc. 38). Specifically, Plaintiff's Exhibits attached to his Doc. 38 filing include a copy of his final administrative remedy appeal of the DHO's August 13, 2012 decision which found that Plaintiff committed the prohibited acts of Disruptive Conduct, BOP Code 299, and most likely Engaging in a Sexual Act, BOP Code 205, Incident Report No. 2319832. Plaintiff included, along with a copy of his final appeal, a copy of Defendant Watts' August 16, 2013 denial of Plaintiff's final appeal of his Administrative Remedy No. 704474-A1 with respect to his stated challenge to his disciplinary conviction.

Plaintiff did not file a paragraph-by-paragraph response to Defendants' SMF as he was required to do by Local Rule 56.1, M.D. Pa. Plaintiff was provided with the pertinent Local Rules of this Court in this case and in his prior civil rights cases, and he was well aware of Rule 56.1. (Doc. 3).

Further, on September 18, 2013, Plaintiff filed a Motion to amend his Complaint to add a new Defendant, *i.e.*, CO Fleeger, to his Complaint. **(Doc. 39)**. Plaintiff contends that CO Fleeger of USP-Lewisburg should be added as a Defendant in this case since Fleeger retaliated against him for filing the instant case by destroying his personal property when he was being transferred to FCC-Allenwood on July 3 2013. Plaintiff did not file a support brief as required under Local Rule 7.6, M.D. Pa., with respect to his Doc. 39 Motion. As mentioned, Plaintiff was provided with the pertinent Local Rules of this Court in this case and in his prior civil rights cases, and he was well

aware of Rule 7.6. (Doc. 3). Also, Plaintiff must exhaust all of his BOP administrative remedies with respect to his new First Amendment retaliation claim against CO Fleeger before he can file an action in federal court. See *Mitchell v. Dodrill*, 696 F.Supp. 2d 454 (M.D. Pa. 2010).

On October 4, 2013, Defendants filed a Motion to Stay the Court's decision regarding Plaintiff's Doc. 39 Motion to amend his Complaint to add a new Defendant to his Complaint and, to grant them a 14-day extension of time to file their opposition brief after Congress has restored the lapse of appropriations in the funding for the Department of Justice. **(Doc. 43)**.

Based on our above discussion concerning Plaintiff's Motion to amend his Complaint to add a new Defendant **(Doc. 39)**, and based on our discussion below in which we find that Defendants' **Doc. 24** dispositve motion should be granted, we will recommend that Plaintiff's Doc. 39 Motion be denied since we also find futility in allowing Plaintiff to amend his Complaint. We will further recommend that Defendants' Motion to Stay the Court's decision regarding Plaintiff's Doc. 39 **(Doc. 43)** be denied as moot.

On September 23, 2013, we issued a Memorandum and Order denying Plaintiff's Motion for Reconsideration of the Court's Doc. 35 Order denying his Motion to Appoint Counsel. (Doc. 40).

On September 30, 2013, Defendants filed their reply brief regarding their Motion to Dismiss and for Summary Judgment. (Doc. 41). Also, on September 30, 2013, Plaintiff filed another "Addendum" with Exhibits addressing the exhaustion issue with respect to his claim that USP-Lewisburg staff intentionally damaged his incoming legal mail by cutting the envelope in half. Plaintiff included a copy of his final appeal and a copy of Defendant Watts' September 16, 2013

denial of Plaintiff's final appeal of his Administrative Remedy No. 732581-A1 with respect to his stated claim.   (Doc. 42).

Defendants' **Doc. 24** Motion to Dismiss and for Summary Judgment is now ripe for disposition.  We have been assigned this case for pre-trial matters.

## II.     STANDARDS OF REVIEW.

### A.     *BIVENS* STANDARD

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights action.  *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200, n. 16 (M.D. Pa. 1992); *Mitchell v. Dodrill*, 696 F.Supp. 2d 454, 457, n. 1 (M.D. Pa. 2010)(citing *Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004)).  To state a claim under *Bivens*, Plaintiff must allege that he was deprived of a federal right by a person who was acting under color of federal law.  *See Young v. Keohane*, 809 F.Supp. at 1199; *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250 (1988).

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976).  It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003).  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events

or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Fisher v. Matthews*, 792F.Supp.2d 745, 2011 WL 1982920, * 23 (M.D. Pa. 2011) *(citing*

*Rode, supra)*.

### B. MOTION TO DISMISS STANDARD

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court

stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009).  "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).  *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

> [D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must

accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*
*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " Guirguis v. Movers Specialty Services, Inc., No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

## C. SUMMARY JUDGMENT STANDARD

A motion for summary judgment may not be granted unless there is not genuine issue of

material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

A material fact is one that may affect the outcome of the suit. *Justofin v. Metro. Life Ins. Co.*, 372

F.3d 517, 521 (3d Cir. 2004). The moving party may demonstrate that no genuine dispute as to any

material fact exists by citing to pleadings, depositions, answers to interrogatories, admissions on file,

and any affidavits. Fed. R. Civ. P. 56(c). The reviewing court may consider any materials in the

record in determining whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56(c)(3).

An issue of fact is "'genuine only if a reasonable jury, considering the evidence presented, could

find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving lack of genuine issue of material fact is initially on the moving party. *Childers*, 842 F.2d at 694 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The burden of proof shifts to the nonmoving party, however, when the moving party demonstrates no such genuine issue of fact. *Forms, Inc. v. Am. Standard, Inc.*, 546 F. Supp. 314, 321 (E.D. Pa. 1982), *aff'd. mem.*, 725 F.2d 667 (3d Cir. 1983). The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.

In determining the existence of an issue of material fact, the reviewing court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). As such, the court must accept the nonmoving party's allegations as true and resolve any conflicts in his or her favor. *Id.* (*citing Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

## III.     STATEMENT OF MATERIAL FACTS.

As stated, Defendants properly filed their SMF with citation to the evidence  (Doc. 34, ¶'s 1-116), as required by Local Rule 56.1, M.D. Pa.  Also, Defendants submitted Exhibits with their SMF to support each one of their contentions.  (Docs. 34-1, 34-2 & 34-3). Plaintiff failed to file his paragraph-by-paragraph response to Defendants' SMF, and we afforded Plaintiff with ample opportunity to do so.  Defendants correctly point out in their Doc. 41 reply brief, that Plaintiff 's

Doc. 36 opposition brief does not contain a proper response to their SMF in conformance with Rule 56.1. We agree with Defendants that "[Plaintiff] has made unsupported statements as to his contentions of fact with his [Doc. 36] opposition brief." (Doc. 41, p. 3). As mentioned, Plaintiff was provided with the pertinent Local Rules of this Court in this case and in his prior civil rights cases, and he was well aware of Rule 56.1. (Doc. 3).

Since Defendants have properly filed their SMF in support of their Summary Judgment Motion (Doc. 34), as required by Local Rule 56.1 of M.D. Pa., and their facts are all properly supported by evidence, and since Plaintiff failed to properly respond to Defendants' SMF, we agree with Defendants (Doc. 41, pp. 2-4) that all of their facts contained in their SMF should be deemed as admitted. *See Carpenter v. Kloptoski*, 2012 WL 911558, *1 (M.D. Pa. March 16, 2012)("Because Plaintiff [a pro se inmate in a §1983 civil rights action] has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement [] will be deemed admitted.").

Further, none of Defendants' facts in their SMF are properly disputed by Plaintiff with citation to evidence. Thus, we find that Plaintiff has not properly responded to Defendants' SMF as required by Local Rule 56.1, M.D. Pa. *See Cyrus v. Laino*, Civil No. 08-1085, M.D. Pa.; *Cyrus v. Freynik*, Civil No. 08-2278, M.D. Pa.; *Michatavi v. Martinez*, 2009 WL 5172962 (M.D. Pa.); *Hemingway v. Ellers,* 2008 WL 3540526 (M.D. Pa.)*; Accolla v. U.S.*, 2009 WL 3625383 (M.D. Pa.), affirmed 2010 WL 763550 (3d Cir.)(court found that since Plaintiff inmate in civil rights action did not properly respond to prison staff Defendants' statement of facts as required by L.R. 56.1, M.D. Pa., Defendants' statement of facts were undisputed). Regardless of Plaintiff's failure to properly

respond to Defendants' statement of facts, we accept Defendants' statement of facts since they are all supported by their evidence. However, Plaintiff submitted two documents titled "Addendum" with attached Exhibits in response to Defendants' Motion for Summary Judgment (Docs. 38 & 42) and he submitted Exhibits with his Complaint which we will consider.[4]

We will discuss the relevant material facts below to the extent necessary in considering Defendants' arguments in support of their Doc. 24 dispositive motion.

**IV.     DISCUSSION**.

In his Complaint, Plaintiff raises procedural due process claims regarding his disciplinary convictions on two Incident Reports, No. 2194622 (Possession of a Weapon) and No. 2319832 (Disruptive Conduct, most like Engaging in a Sexual Act), Eighth Amendment denial of medical care claim regarding his kidney stones condition, and denial of access to the courts claim. (Doc. 1). Plaintiff requests damages in the amount of five million dollars. Plaintiff sues all 12 Defendants, who are employees of the BOP only in their individual capacities.

We find that Plaintiff's request for a specific amount of monetary damages against Defendants of five million dollars (Doc. 1, p. 47) should be stricken from his Complaint. Since Plaintiff seeks unliquidated damages, he cannot claim specific sums of relief. Pursuant to Local Rule 8.1, M.D. Pa., we will recommend that Plaintiff's request for specific monetary damages should be stricken from his Complaint. *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa. (1-9-06 Order, J. McClure); *Said v. Donate*, Civil No. 07-1550, M.D. Pa.

---

[4]We note that many of Plaintiff's Exhibits submitted with his Complaint are the same as Defendants' Exhibits submitted with their SMF, such as administrative remedies and responses and, records regarding the relevant Incident Reports issued against Plaintiff.

Initially, Defendants contend that Plaintiff's *Bivens* claims against them in their official capacities are barred by sovereign immunity, and should be dismissed for lack of jurisdiction. (Doc. 33, pp. 10-11).

To the extent that Plaintiff is seeking monetary damages (*i.e.*, compensatory damages) against Defendants, we find that he is correct since he is only seeking monetary damages from the BOP Defendants in their personal or individual capacities. *See Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998); *Douglas v. BOP,* Civil NO. 08-0140 (M.D. Pa.); *Debrew v. Auman*, 354 Fed. Appx. 639, 641 (3d Cir. 2009)(Per Curiam). The law is clear that *Bivens* "only authorizes suit against federal officials in their individual capacities and not against the United States and federal agencies." *Goodson v. Maggi*, 2010 WL 1006901, *7 (W.D. Pa. 2-22-10). Thus, we do not find that Plaintiff is asserting any *Bivens* claims against Defendants in their official capacities. As such, we find that Defendants' contention that Plaintiff's *Bivens* claims against them in their official capacities are barred by sovereign immunity is moot.

Next, Defendants argue that BOP supervisory officials Watts, Campbell and Simmons should be dismissed, under Fed.R.Civ.P. 12(b)(2), for lack of personal jurisdiction since these three Defendants did not have sufficient contacts with Pennsylvania. (Doc. 33, pp. 11-14). Defendants also argue that Plaintiff has only named Watts, Campbell and Simmons as Defendants based on *respondeat superior*. (*Id.*, pp. 14-18). Further, Defendants maintain that USP-Lewisburg Warden Thomas cannot be held liable in this case based on *respondent superior*. Additionally, Defendants point out that simply because Defendants Thomas, Simmons and Watts denied Plaintiff's appeals of his Administrative Remedies is not sufficient to hold these Defendants liable in this action. We

agree with Defendants that Thomas, Simmons, Campbell and Watts should be dismissed from this action with prejudice.

As stated, Jeff Campbell was the BOP Southeast Regional Office Attorney and was employed in FCC-Coleman, Florida, from October 19, 2003, until his retirement on May 31, 2012. (Doc. 34, ¶ 115). Craig Simmons was the BOP Administrative Remedy Coordinator, Southeast Regional Office, Atlanta, Georgia. Harrell Watts is the Administrator for BOP National Inmate Appeals in the Central Office located in Washington, D.C. Thomas is the USP-Lewsiburg Warden. While Defendants argue that Defendants that Simmons, Campbell and Watts should be dismissed since Plaintiff's allegations against them regarding decisions they made outside of Pennsylvania concerning Plaintiff's appeals of his BOP administrative remedies are not sufficient contacts to establish personal jurisdiction over them, we find that Plaintiff has failed to state a cognizable claim against these three Defendants. We also find that Plaintiff has failed to state a claim against Defendant Warden Thomas based on Thomas' alleged involvement in the BOP administrative remedy process. For example, Plaintiff alleges that Defendant Warden Thomas' response to his administrative remedy concerning his claim of improper medical care was "inadequate" and that Thomas tried to circumvent policy by not conducting an accurate investigation. (Doc. 1, p. 45). Also, as stated, Plaintiff submitted two Addendums which included copies of his final appeals and copies of Defendant Watts' denial of Plaintiff's final appeal of his Administrative Remedies with respect to his challenge to his disciplinary conviction claim and his claim regarding his legal mail. (Docs. 38 & 42).

We agree with Defendants (Doc. 33, pp. 15-17) that Plaintiff has named Defendants Thomas, Simmons, Campbell and Watts as parties to his action based on their involvement with Plaintiff's BOP administrative remedies, and, as such, these Defendants should be dismissed with prejudice from this action. (Doc. 1 at 15-16, 26, 36-37 & 44). It is well-established that inmates do not have a constitutionally protected right to a prison grievance system. *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *see also Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (ruling that federal grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure). It is further well-settled that officials handling of prison grievance procedures does not equate to personal liability in a civil rights claim. *Burnside v. Moser*, Civil No. 04-2485, 12-16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005); *see also Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010).

This Court has also recognized that grievance procedures are not constitutionally mandated. *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March 15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-Precedential). Even if the prison provides for a grievance procedure, as USP-Lewisburg and the BOP do, violations of those procedures do not amount to a civil rights cause of action. *Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988); *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir. 1995); *see also Burnside v. Moser*, *supra* (Even "[i]f the state elects to provide a grievance mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.") (citations omitted). Thus, even if the prison official allegedly failed to

process the prisoner's grievances, no constitutional claim is stated. *Burnside, supra. See also Mincy v. Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.) (claims by inmates regarding the prison grievance procedures are unavailing since "prisoners do not have a constitutional right to prison grievance procedures.")(citations omitted).

Therefore, because Plaintiff has named Thomas, Simmons, Campbell and Watts as Defendants only due to their roles as supervisors and for their involvement in the BOP administrative remedy process, we will recommend that these four Defendants be dismissed with prejudice from this action. Also, as Defendants point out with respect to Thomas, Simmons, Campbell and Watts , "there is no evidence that any [of these Defendants] was involved in denying [Plaintiff's] administrative remedies as the responses to the specific remedies he challenges were signed by someone other than those Defendants. See Compl. (Doc. 1-1 - 1-5)." Doc. 33, p. 16).

In fact, as Defendants correctly indicate (Doc. 33, pp. 15-16), insofar as Plaintiff sues Defendant Warden Thomas for failing to review the decisions of the DHO's who found him guilty of the two Incident Reports, "Warden Thomas does not conduct investigations into disciplinary hearing matters as any appeals of such maters are reviewed and investigated by the [BOP] Regional Office, not the [prison]. See [Doc. 34] ¶¶ 45, 47; see also 28 C.F.R. §542.12(d)(2) ... ."[5]

Further, we find that Plaintiff only avers the involvement of Defendants Thomas, Simmons, Campbell and Watts through their BOP positions and based on the doctrine of *respondent superior*.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

---

[5]Since Defendants properly cite to their evidence to support each one of their statements of material fact, we do not repeat the cites to Defendants' evidence herein. (*See* Doc. 34).

15

The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (non-precedential).

*See also Santiago v Warminister Tp.,* 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

The Court in *Rogers,* 696 F.Supp.2d at 488, repeated the personal involvement necessary in civil rights action, and stated:

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id. quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 [or 1331] liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious

liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-1295 (3d Cir.1997) (to hold police chief liable under § 1983 [or1331] for violating female subordinate officer's rights, she was required to prove that he personally participated in violating the her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations). If a grievance official's only involvement is investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. *Rode,* 845 F.2d at 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2, 2006).

Based on the above, we concur with Defendants that Plaintiff's allegations against Thomas, Simmons, Campbell and Watts, as well as the evidence, show that these Defendants lacked the requisite personal involvement with regards to Plaintiff's constitutional claims. Plaintiff does not allege any wrongdoing by these four (4) Defendants other than based on *respondeat superior*.

In light of the very detailed and lengthy Complaint Plaintiff filed as well as Plaintiff's Exhibits and the undisputed evidence, we find futility in allowing Plaintiff to amend his Complaint as against Defendants Thomas, Simmons, Campbell and Watts. The Third Circuit has held that a Plaintiff who filed an *in forma pauperis* request and whose Complaint fails to state a cognizable claim is entitled to amend his pleading unless the Court finds bad faith, undue delay, prejudice, or futility. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 111 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d 229, 235-236 (3d Cir. 2004). As discussed, based on well-settled law and the undisputed evidence, we find futility in granting Plaintiff leave to amend his constitutional claims against supervisory Defendants Thomas, Simmons, Campbell and Watts and, thus, we will recommend that these Defendants be dismissed with prejudice.

Next, we consider Plaintiff 's Eighth Amendment denial of proper medical care claim against Defendant HSA Brown.  Plaintiff alleges that Defendant HSA Brown failed to maintain an adequate medical record for his care and failed "to exercise his authority to ensure [USP-Lewisburg] medical staff are in compliance with their duties."  Plaintiff further avers that he repeatedly told Defendant Brown and others about his pain from his two kidney stones and, that Brown had "no obvious concerns in fixing the problem."  (Doc. 1, pp. 23-24, 44).

The evidence shows that Defendant HSA Brown "supervises staff assigned to the [USP-Lewisburg] medical department in the performance of their non-clinical duties" and that "HSA Brown is not a physician's assistant or a medical doctor."  (Doc. 34, ¶'s 108-109).     Further, Defendant HSA Brown "is not authorized to prescribe medication and does not provide medical care or treatment."  (*Id.*, ¶ 110).

Substantiating an Eighth Amendment cruel and unusual punishment claim requires showing that the defendant acted with "deliberate indifference to [the plaintiff's] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).  The plaintiff must prove two components within this standard: an objective showing that the denial of medical care was "sufficiently serious," and a subjective showing that the defendant acted with a culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The court is also highly deferential to the judgment of prison medical authorities and ordinarily does not second-guess the adequacy or soundness of a particular course of treatment, unless absolutely no medical care is provided for an objectively serious medical need. *Little v. Lycoming Cty.,* 912 F. Supp. 809, 815 (M.D.Pa. 1996).

On this basis, we find that Plaintiff has failed to demonstrate his denial of medical care claim against Defendant HSA Brown.   First, the record clearly shows that Plaintiff was indeed provided with extensive medical treatment for his kidney stones at USP-Lewisburg. (Doc. 34, ¶'s 57-104). We agree with Defendants that Plaintiff merely disagrees with the medical treatment he was provided during the relevant time.   When the inmate is provided medical care and the legal debate is merely over the adequacy of the treatment, the Third Circuit has held that it will not second-guess whether a course of treatment is adequate or proper. *Parham v. Johnson*, 126 F.3d 454, 458 n. 7 (3d Cir. 1997).   Here, Plaintiff was evaluated by multiple prison medical providers and he was  provided with a course of treatment, including pain medication. (*Id.*).   Given the court's deference to the course of treatment carried out by prison medical officials, we find that Defendant HSA Brown is entitled to summary judgment with respect to  Plaintiff's denial of proper medical care claim. *See Parham*, 126 F.3d at 458.    Also, as stated above, we find that Defendants' undisputed evidence shows  that Plaintiff was given treatment for his kidney stones  and that he was receiving pain medication as well as testing for his condition.

Also, as discussed above, we find that Defendant HSA Brown is entitled to summary judgment with respect to Plaintiff's denial of medical care claim since an individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d. Cir. 2005).  For the Plaintiff's Eighth Amendment claim to proceed against Defendant Brown, Plaintiff would have to establish that Brown acted with a culpable state of mind to deny him adequate medical care. *Caldwell, 732 F. Supp. 2d 458* at 472.  As mentioned, the

evidence shows that Defendant Brown was not authorized to prescribe medication and did not provide medical care or treatment to inmates.

Thus., we will recommend that Defendants' Summary Judgment Motion be granted regarding Plaintiff's claim for denial of medical care against Defendant HSA Brown.   We find that Plaintiff has failed to demonstrate his Eighth Amendment claim against Defendant HSA Brown, a non-physician, as the evidence shows Plaintiff was afforded medical care by the prison medical staff and he received medical attention for his kidney stones.  *Durmer v. O'Carroll*, 991 F.2d. 64, 69 (3d. Cir. 1993); *see also Thomas v. Zinkel,* 155 F. Supp. 2d 408, 413 (E.D. Pa. 2001)(Prison officials "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor."(citing *Durmer*, 991 F. 2d at 69 n. 14)); *Newton v. Reitz*, 2009 WL 233911("non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff.")(citing *Durmer*, 991 F. 2d at 69); *Meekins v. Law*, 2007 WL 2318118, * 3 (M.D. Pa. 8-8-07).

Defendants contend that personal involvement is lacking as to CO Barbella, SIA Heath and Captain Entzel.  (Doc. 33, pp. 19-21).   As Defendants state, Plaintiff named CO Barbella as a Defendant since Plaintiff alleged that Barbella wrote an Incident Report (No. 2194622) on August 5, 2011, charging him with possession of a weapon (Code 104) when a razor blade was found in Plaintiff's cell after a shakedown. (Doc. 33, p. 19).  In his Complaint, Plaintiff alleges that CO Barbella improperly wrote him up for possessing a razor blade soon after he arrived at USP-Lewisburg as retaliation for Plaintiff's past lawsuits against prison staff and that the razor blade was

not found in his property. Plaintiff also alleged that every time he used a razor during his scheduled shower days, he returned them and they were accounted for. (Doc. 1, pp. 7-8).    Defendants state that "[i]n actuality, [CO] Barbella was neither involved in the search of [Plaintiff's] cell nor did he write the incident report." (Doc. 33, p. 19). Defendants cite to their SMF, Doc. 34, ¶'s 3-5. Defendants' evidence shows that CO C. Hurley wrote Incident Report No. 2194622 against Plaintiff and that CO Barbella did not even participate in the shakedown of Plaintiff's cell at issue. (Doc. 34, ¶'s 1-4). Further, CO Barbella avers that he did not have any other involvement with the claims raised by Plaintiff in this case. (*Id.*, ¶ 5).  Defendant DHO Chambers found Plaintiff and his cell mate guilty of  Incident Report No. 2194622 regarding possession of the razor blade. (*Id.*, ¶'s 11-18).

We find that the evidence shows Defendant CO Barbella did not have the required personal involvement with respect to Plaintiff 's constitutional claims.  Thus, we will recommend that Defendants' Summary Judgment Motion be granted regarding Plaintiff's claims against Defendant CO Barbella.

Defendants state that Plaintiff failed to specifically mention Defendant SIA (Special Investigative Agent) Heath in his Complaint, and that Plaintiff only alleges that he requested unnamed SIA's to investigate and polygraph CO Shivery and other prison staff about claims they were making against him and, that  his requests were ignored.  (*See* Doc. 1, p. 36). Defendants point out that the evidence shows Defendant SIA Heath was not responsible for investigating prison staff at USP-Lewisburg.  (Doc. 33, p. 19).  Defendants also point out that  SIA Heath denied any personal involvement with Plaintiff's claims.  Defendants cite to their SMF, Doc. 34, ¶'s 28-32.

We find that Defendants' evidence demonstrates that Defendant SIA Heath did not conduct investigations of prison staff at USP-Lewisburg and that another SIA was responsible for such investigations. We also find that the evidence shows Defendant SIA Heath did not have the required personal involvement with respect to any of Plaintiff's constitutional claims. Thus, we will recommend that Defendants' Summary Judgment Motion be granted regarding Plaintiff's claims against Defendant SIA Heath.

Defendants state that '[t]he only allegations [made by Plaintiff] against Captain Entzel is that he purportedly 'lied' in his response to an administrative remedy filed [Plaintiff] and that he deprived [Plaintiff] of due process by not allowing [Plaintiff] to review video surveillance tapes of a mass shakedown in which [Plaintiff's] property was allegedly confiscated and destroyed." (Doc. 33, pp. 19-20). In his Complaint, Plaintiff alleges that on September 10, 2012, there as a mass shakedown at USP-Lewisburg and that when he was escorted out of his segregated cell to a holding cell in the shower area, some of his legal books and his Black's law dictionary were destroyed and confiscated by unnamed prison staff. Plaintiff avers that this conduct denied him access to the courts since he was not able to work on his appeal of his state court conviction. Plaintiff alleges that he requested surveillance video tape be reviewed to determine what staff members went into his cell and took his legal property. Plaintiff states that he filed an Administrative Remedy and that the responses by the Defendant Captain and Defendant Warden Thomas was that his cell was not involved in the shakedown and was not searched. Plaintiff alleges that the Defendant Captain committed perjury in his administrative remedy response and, that the Captain and Warden violated his due process rights by failing to review the video tape and conduct an investigation into

his alleged lost and destroyed personal property as they were required to do.  (Doc. 1, pp. 39-42).

Defendants state that their evidence show that Warden Thomas and not Captain Entzel denied Plaintiff's administrative remedy at issue alleging that his property was confiscated and destroyed.  Defendants also state that "Captain Entzel did not  confiscate any of [Plaintiff's] legal materials and is not involved in preserving video surveillance footage at USP Lewsiburg."  (Doc. 33, p. 20).

We find that Defendants' evidence demonstrates that Defendant Captain Entzel did  not deny Plaintiff's relevant administrative remedy and Entzel was not involved with the alleged confiscation of Plaintiff's legal materials during the mass shakedown on September 10, 2012.  We do not find that Plaintiff has presented any evidence to show that Defendant Entzel or any Defendant was involved with the alleged  confiscation of Plaintiff's legal materials during the shakedown. (*See* Doc. 1-3, p. 27, no staff name on Inmate Property Record). The evidence also shows that Defendant Warden Thomas responded to Plaintiff 's  administrative remedy and advised Plaintiff that the video surveillance tapes were no longer available at the time Plaintiff filed his administrative remedy. Plaintiff has not presented any evidence to show that the surveillance tapes were still available and he only speculates as to their existence. The evidence further shows that Defendant Entzel was not involved in preserving video surveillance tapes at USP Lewisburg.   We also  find that the evidence shows Defendant Captain Entzel did not have the required personal involvement with respect to Plaintiff's constitutional claims against him.  (*See* Defendants' SMF, Doc. 34, ¶'s 48-56).  Thus, we will recommend that Defendants' Summary Judgment Motion be

granted regarding Plaintiff's claims against Defendant Captain Entzel.[6]

Defendants next maintain that Plaintiff's challenges to the two Incident Reports issued against him at USP-Lewisburg in 2011 and 2012, and his challenges to the disciplinary proceedings and his convictions as violating his due process rights, are *Heck* barred. (Doc. 33, pp. 23-25). As mentioned, Plaintiff was convicted of the charges in two Incident Reports, No. 2194622 (Possession of a Weapon) and No. 2319832 (Disruptive Conduct, most like Engaging in a Sexual Act), and part of his sanctions included loss of good conduct time ("GCT"). (Doc. 34, ¶'s 16 & 39).

Defendants correctly state: "As to the 2011 incident report, [Plaintiff] avers that his due process rights were violated by [CO] Barbella for allegedly writing the false incident report; by DHO Chambers for wrongfully finding him guilty of the charges' by [CO] Haines for not being an adequate staff representative at the DHO hearing; and by Attorney Campbell, Warden Thomas, and National Inmate Appeals Administrator Watts for failing to investigate the DHO proceedings during the administrative remedy process to ensure the proceedings complied with [BOP] policy and [Plaintiff's] due process rights. See Compl. (Doc.1) at 6-18." (Doc. 33, p. 23).

Further, Defendants properly summarize Plaintiff's due process claims regarding the 2012 Incident Report, and state: "With regard to the 2012 incident report, [Plaintiff] avers that his due process rights were violated by [CO] shivery for writing a false incident report; by DHO Jordan for not granting him the opportunity to view a videotape, for denying him staff representation and for wrongfully finding him guilty of the charges' by Warden Thomas and the 'SIA' (presumably

---

[6]As discussed above, we have found that Plaintiff cannot hold Defendant Warden Thomas liable in this *Bivens* action based on Thomas' responses to his appeals of his administrative remedies and based on *respondeat suprerior*.

Defendant Heath) for failing to conduct a polygraph test on [CO] Shivery concerning statements made in the incident report; and by Warden Thomas and National Inmate Appeals Administrator Watts for failing to investigate the DHO proceedings during the administrative remedy process to ensure the proceedings complied with [BOP] policy and [Plaintiff's] due process rights. See Compl. (Doc.1) at 25-38.[7] (Doc. 33, p. 24).

We agree with Defendants that Plaintiff's challenges to the two Incident Reports issued against him at USP-Lewisburg 2011 and 2012, and his challenges to the disciplinary proceedings and his convictions are *Heck* barred since it is not disputed that as a result of the sanctions imposed, Plaintiff's duration of confinement in prison was affected.

Thus, with respect to many of the claims raised in Plaintiff's instant Complaint in which Plaintiff alleges that he was falsely issued incident reports, improperly convicted and sentenced to on the charges, *i.e.,* deprived of his due process rights with respect disciplinary hearings, these claims challenging the validity of his disciplinary convictions are *Heck* barred since the sanctions imposed undisputedly affected the length of his confinement in prison. As such, we agree with Defendants that Plaintiff's claims are *Heck* barred until Plaintiff successfully has his stated disciplinary convictions overturned.

In *Braggs v. Flatt*, 2009 WL 2750120, *4-*5 (W. D. Pa.), the Court stated:

> *Heck v. Humphrey* [512 U.S. 447 (1994) ] and its progeny. In *Heck,* the Supreme Court held that a prisoner could not maintain a § 1983 action for damages under the civil rights laws if "a judgment in favor

---

[7]We note that the page references to Plaintiff's Complaint cited by Defendants are the numbers Plaintiff wrote on the bottom of his pages as opposed to the page numbers on ECMF. We use the page numbers found on ECMF.

of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. The Court has summarized this so-called "favorable termination requirement" by explaining that a "state prisoner's § 1983 action is barred (absent prior invalidation)-**no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings**)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). *See also Hill v. McDonough,* 574 U.S. 73 (2006); *Muhammad v. Close,* 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004).

Further, in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court extended *Heck* further by holding that a state prisoner's § 1983 action challenging a prison disciplinary sanction and seeking "money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983" unless the disciplinary sanction has been overturned or invalidated. 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906.

(Emphasis added);  *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785, *8 (M.D. Pa.).

Insofar as Plaintiff is challenging his convictions from the alleged false incident reports Defendants issued against him, which resulted in sanctions that lengthened his prison confinement, he must file a § 2241 habeas corpus petition regarding his due process challenges to such convictions.  The Supreme Court has held that a civil rights action is a proper remedy for a prisoner who claims that his conditions of confinement violate the constitution, but is not challenging the fact or length of his custody.  *Preiser v. Rodriguez*, 411 U.S. 475, 499, 93 S. Ct. 1827 (1973); *Queen v. Miner*, C.A. No. 08-1049 (3d Cir. 2-29-08), slip op. p. 3, n. 3 (Per Curiam) ("challenge that affects fact or duration of confinement must be brought in habeas petition") (citing *Preiser, supra*).  Thus, all of Plaintiff's constitutional claims which essentially challenge length of his confinement based on

his disciplinary convictions and loss of GCT for the two incident reports must be brought in a § 2241 habeas petition.[8]

Further, any claims by Plaintiff for money damages which call into question the validity of his two disciplinary convictions by Defendants DHO Chambers and DHO Jordan regarding the incident reports issued against him, are *Heck*-barred until he has the convictions overturned on appeal or through a §2241 habeas petition.  *See Sandy v. Lehigh Co. Dist. Attorney*, 2008 WL 910001, *1-*2 (E.D. Pa.); *Kalomiris v. Monroe County Syndicate*, 2009 WL 73785 (M.D. Pa.); *Washam v. Stesis*, 321 Fed. Appx. 104, 105 (3d Cir. 2009); *McCullon,* 2011 WL 139841, *8-*9.

Thus, all of Plaintiff's constitutional claims under *Bivens* regarding the incident reports issued against him and regarding his disciplinary convictions, are subject to dismissal as *Heck*-barred because Plaintiff must first have his convictions on the incident reports  overturned by filing a §2241 habeas petition.  *See McCullon,* 2011 WL 139841, *8-*9.

In *Taylor v. JFC Staffing Assoc.*, 690 F. Supp. 2d 357, 375-77 (M.D. Pa. 2009), the Court stated:

> In *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) the Supreme Court announced what is called the "favorable

---

[8]The Third Circuit in *Leamer v. Fauver*, 288 F. 3d 532, 542 (3d Cir. 2002), stated: whenever the challenge ultimately attacks the 'core of habeas' -- the validity of the continued conviction or the fact or length of the sentence -- a challenge, however denominated and <u>regardless of the relief sought,</u> must be brought by way of a habeas corpus petition.  Conversely, when the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, an action under § 1983 [or § 1331] is appropriate. (Emphasis added).

termination rule," which forecloses certain § 1983 [or 1331] actions for plaintiffs who have plead guilty to criminal charges. In *Heck,* the Supreme Court stated:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 [or 1331] plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.... A claim for damages bearing relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983 [or 1331].

*Id.* at 486-87, 114 S.Ct. 2364 (emphasis in original). The final termination rule announced in Heck also bars those § 1983 [or 1331] claims that have the effect of impugning the underlying criminal conviction. *See Marable v. Pottsgrove Twp.,* 176 Fed.Appx. 275, 281 (3d Cir.2006).

*See also Turosik v. Hougue*, 2011 WL 1044648, *10 (W.D. Pa. 3-18-11).

Therefore, Defendants are entirely correct in stating that since Plaintiff has not shown his disciplinary convictions on Incident Reports No. 2194622 (Possession of a Weapon) and No. 2319832 (Disruptive Conduct, most like Engaging in a Sexual Act) have been overturned or expunged, the Court should dismiss all of Plaintiff's constitutional claims regarding these incident reports. (Doc. 33, p. 25).

Additionally, Defendants maintain that Plaintiff has failed to establish his Eighth Amendment denial of medical care claims against any Defendant. (Doc. 33, pp. 26-30). Plaintiff basically alleges that he was denied proper medical care when he was confined at USP-Lewisburg for the two kidney stones he had and for the continual pain he suffered from his condition. (Doc. 1, pp. 19-24). Defendants contend that Plaintiff does not name any medical Defendants in his Complaint

and that he only makes specific allegations regarding the lack of proper medical care against

Defendant HSA Brown. Plaintiff avers in his Complaint that he repeatedly advised Defendant HSA

Brown of the continued pain and discomfort he experienced from his two kidney stones since

December 2011, that his condition was serious, and that Brown "failed to maintain adequate

medical record[s] and failed to exercise authority to ensure medical staff are in compliance with

their duties" by depriving him of proper treatment. Plaintiff also alleges that Defendant HSA Brown

failed to ensure that he received an initial physical exam within 14 days of his arrival at USP-

Lewisburg on July 7, 2011, as mandated by BOP policy. Plaintiff states that he was eventually given

a physical exam in late October 2011. Plaintiff also appears to allege that he was not given an

annual physical exam at USP-Lewisburg by the "Medical Health Care Supervisor" which is required

by the BOP for inmates over 50 years old like himself. (*Id*., pp. 23 & 44-45).

Based on the aforementioned allegations, we agree with Defendants (Doc. 33, p. 28) that

Plaintiff has failed to allege the personal involvement of any Defendant except for HSA Brown with

respect to his Eighth Amendment denial of medical care claims. Plaintiff does not allege any facts

whatsoever regarding any of the other Defendants, and certainly does not allege that the other

Defendants were in any way involved in his denial of proper medical care claims.

The Third Circuit stated in *DeFranco v. Wolfe*, 387 F. App'x 147, 158 (3d Cir. 2010):

To demonstrate an Eighth Amendment violation, [the inmate] must show:

> "acts or omissions sufficiently harmful to evidence deliberate
> indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S.
> 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). We have interpreted
> this to mean that there are two prongs to the inquiry: (1) deliberate
> indifference on the part of prison officials; and (2) the prisoner's
> medical needs are serious. *Monmouth County Corr. Inst. Inmates v.*

*Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987); *accord Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir.1999).

Deliberate indifference is more than an "inadvertent failure to provide adequate medical care." *Estelle,* 429 U.S. at 105, 97 S.Ct. 285. It is more than mere negligence or medical malpractice without some more culpable state of mind. *Id.* at 106, 97 S.Ct. 285; *Rouse,* 182 F.3d at 197; *Lanzaro,* 834 F.2d at 346. For example, disagreement of professional opinion among doctors does not equal deliberate indifference. *Rouse,* 182 F.3d at 197; *Lanzaro,* 834 F.2d at 346. Instead, it requires "obduracy and wantonness ... [,] which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse,* 182 F.3d at 197 (citations omitted).

The Third Circuit further defined deliberate indifference in *Natale v. Camden City Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The Court held:

A prison official acts with deliberate indifference to an inmate's serious medical needs when "he knows of an disregards an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment... ." *Estelle*, 429 U.S. 97. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id* at 107. "[A]s long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is

> insufficient to establish a "deliberate indifference." *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

*See also George v. PA DOC*, 2010 WL 936778, *5.

We find that Plaintiff has only alleged Defendant HSA Brown's personal involvement in his Eighth Amendment claims, and that Plaintiff has failed to establish through the evidence the elements of these claims in relation to Defendant Brown. In regards to his Eighth Amendment denial of medical care claims, we concur with Defendants that the undisputed evidence shows HSA Brown did not act with deliberate indifference to Plaintiff's serious medical needs concerning his kidney stones. Therefore, we find that Plaintiff has failed to sufficiently state any Defendant other than HSA Brown's personal involvement in his Eighth Amendment medical care claims and, that he has failed to demonstrate the elements of an Eighth Amendment denial of medical care claim against Brown.

Substantiating an Eighth Amendment cruel and unusual punishment claim requires showing that the defendant acted with "deliberate indifference to [the plaintiff's] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). The Plaintiff must prove two components within this standard: an objective showing that the denial of medical care was "sufficiently serious," and a subjective showing that the defendant acted with a culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The court is also highly deferential to the judgment of prison medical authorities and ordinarily does not second-guess the adequacy or soundness of a particular course of treatment, unless absolutely no medical care is provided for an objectively serious medical need. *Little v. Lycoming Cty.,* 912 F. Supp. 809, 815 (M.D.Pa. 1996).

On this basis, we find that Plaintiff has failed to demonstrate his denial of medical care claims against any Defendant. The record shows that Defendant HSA Brown was not a physician's assistant or a doctor, and that he did not prescribe medication or provide medical care and treatment to inmates. Rather, Defendant HSA Brown managed and directed the activities of a team of health care professionals who were responsible for all of the medical care and health services for the inmates at USP-Lewisburg. Defendant HSA Brown also supervised staff assigned to the medical department with respect to their non-clinical duties. (Doc. 34, ¶'s 105-110).

Further, the undisputed record clearly shows that Plaintiff was indeed provided regular and extensive medical treatment and test for his kidney stones during his confinement at USP-Lewisburg commencing on December 11, 2011. Plaintiff also received several diagnostic tests, prescriptions for pain medications, ketorolac injections, consultations (3) with an outside urologist in 2012 and 2013, a radiology referral, x-rays and CT scans. The treatment recommendations by the urologist were approved and followed by the prison medical staff. We agree with Defendants that Plaintiff caused delays in his treatment by his many refusals to allow his blood to be taken and by his failure to comply with treatment (such as drinking a lot of fluids) and the pre-operative preparation for tests which were ordered. (Doc. 34, ¶'s 57-104). As Defendants point out, the evidence shows that Defendant "HSA Brown reasonably believed [Plaintiff] was being treated by a health car provider" for his kidney stone condition. (Doc. 33, p. 29-30). We note that Plaintiff also submitted many copies of his BOP medical records during the time he was confined at USP-Lewisburg. (Doc. 1-4). We find that Plaintiff's own Exhibits substantiate Defendants' contention

32

that no Defendant was deliberately indifferent to Plaintiff's kidney stones condition and that Plaintiff received extensive treatment and tests for his condition.

We find that Plaintiff merely disagrees with the extensive medical treatment he was provided during the relevant time for his kidney stones. When the inmate is provided medical care and the legal debate is merely over the adequacy of the treatment, the Third Circuit has held that it will not second-guess whether a course of treatment is adequate or proper. *Parham v. Johnson*, 126 F.3d 454, 458 n. 7 (3d Cir. 1997). Here, Plaintiff was evaluated on multiple occasions by prison medical providers and outside urologists, and their recommendations for treatment were followed. Given the court's deference to the course of treatment carried out by prison medical officials, we find that Defendant HSA Brown is entitled to summary judgment with respect to Plaintiff's denial of proper medical care claims. *See Parham*, 126 F.3d at 458. Also, as stated above, we find that the evidence shows that Plaintiff was properly treated medically for his kidney stones at USP-Lewisburg and that he was receiving pain medication as well as proper testing for his condition.

Also, as discussed, we find that there is no personal involvement of any other Defendant (besides HSA Brown) with respect to Plaintiff's denial of medical care claims, and that all of the other Defendants are entitled to summary judgment with respect to these claims since an individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing. Liability cannot be predicated solely on the operation of *respondeat superior*. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d. Cir. 2005). For the Plaintiff's denial of proper medical care claim to proceed successfully in the instant case, Plaintiff would have to establish that Defendants acted with a culpable state of mind to deny him adequate medical care. *Caldwell, 732 F. Supp. 2d 458* at

33

472. The evidence shows that no Defendant was deliberately indifferent to Plaintiff's kidney stone condition and his pain.

As mentioned, Plaintiff also alleges that Defendant HSA Brown failed to ensure that he received an initial physical exam within 14 days of his arrival at USP-Lewisburg on July 7, 2011, as mandated by BOP policy, PS 6031.03(19). (*See* Doc. 34, ¶ 113). Plaintiff states that he was eventually given a physical exam in late October 2011. Plaintiff also alleges that he was not given an annual physical exam at USP-Lewisburg by the "Medical Health Care Supervisor" which is required by the BOP (*i.e.*, USP/SMU Lewisburg-Inmate Handbook) for inmates over 50 years old like himself. (Doc. 1, pp. 23 & 44-45). (*See* Doc. 34, ¶ 114).

The evidence shows that before Plaintiff was transferred and arrived at USP-Lewisburg on July 6, 2011, he was given a complete health assessment by the BOP, and that Plaintiff received a physical exam at USP-Lewisburg in October 2011. (Doc. 34, ¶'s 58-60). Thus, we agree with Defendants (Doc. 3, p. 30-31), and find that since Plaintiff had just received an assessment by the BOP before his transfer to USP-Lewisburg and since Plaintiff did not present any new medical problems at the time, we find no merit to Plaintiff's claim that Defendant HSA Brown failed to ensure that he received an initial physical exam within 14 days of his arrival at USP-Lewisburg on July 7, 2011, as mandated by BOP policy, PS 6031.03(19).[9] (*See* Doc. 34, ¶ 113 & Doc. 1-4, p. 1).

Moreover, we agree with Defendants that there is no merit to Plaintiff's claim that he was not given an annual physical exam at USP-Lewisburg since it is not required by the USP/SMU

_____

[9]We note that a violation of an internal policy does not automatically rise to the level of a constitutional violation. *Cyrus v. Laino*, 2008 WL 2858290, *6 (M.D. Pa. July 22, 2008)(citations omitted).

Lewisburg-Inmate Handbook for inmates 50 years old and over, "but rather an option for inmates to request at their preference." (Doc. 33, p. 31 & Doc. 34, ¶ 114 & Doc. 1-4). We note that Plaintiff submitted copies of portions of the USP/SMU Lewisburg-Inmate Handbook. (Doc. 1-4, pp. 1-5).

Finally, Defendants argue that Plaintiff failed to state a cognizable First Amendment denial of access to courts claim. (Doc. 33, pp. 31-34). As stated above, Plaintiff alleges in his Complaint that on September 10, 2012, there as a mass shakedown at USP-Lewisburg and that when he was escorted out of his segregated cell to a holding cell in the shower area, some of his legal materials and books (such as a paperback criminal evidence book) as well as his Black's law dictionary were confiscated and moved to storage or destroyed, in part, by unnamed prison staff. Plaintiff avers that this conduct denied him access to the courts since he was not able to continue working on his appeal of his state court conviction. In fact, in his September 18, 2012 "Correspondence to Staff," Plaintiff simply requested the return of his criminal evidence book since he was "current[ly] working on state case." (Doc. 1-3, p. 31). A response on the bottom of Plaintiff 's Correspondence advised Plaintiff to contact the lieutenant in his Unit or the captain.

Plaintiff alleges that he requested surveillance video tape be reviewed to determine which staff members went into his cell and took and/or destroyed portions of his legal property. Plaintiff's Exhibits found in Doc. 1-3 show that he requested the surveillance video tape be reviewed. Plaintiff states that he filed an administrative remedy. (Doc. 1, pp. 39-42). Plaintiff submitted a copy of the BOP Inmate Personal Property Record dated September 11, 2012, as an Exhibit attached to his Complaint. (Doc. 1-3, p. 27). This Record indicates that "36" of legal material [of

35

Plaintiff was] placed back in storage" and the Record stated "shakedown." As stated above, the Record does not contain the name of any Defendant or any staff member.

The evidence shows that Defendant Warden Thomas denied Plaintiff's administrative remedy and in the response advised Plaintiff that the video surveillance tapes he requested were no longer available at the time Plaintiff filed his administrative remedy. (Doc. 34, ¶'s 48-49). The BOP Regional Director then denied Plaintiff's subsequent appeal of his administrative remedy and stated that there was no evidence that any of Plaintiff's legal property was confiscated or destroyed during the mass shakedown. (Doc. 34, ¶ 51). As stated, Plaintiff 's Exhibit consisting of the Inmate Personal Property Record only indicated that some of Plaintiff's legal material was placed in storage, as opposed to being confiscated or destroyed.

We agree with Defendants that Plaintiff has failed to establish a First Amendment denial of access to courts claim. We construe Plaintiff's Complaint as raising a claim of denial of the right to access the courts under the First Amendment. As Defendants correctly point out, Plaintiff's Complaint is devoid of sufficient facts that he was unable to pursue any non-frivolous criminal appeal due to not having his legal property. Nor did Plaintiff allege that he could no longer pursue any criminal appeal without his confiscated or destroyed legal property. Further, Plaintiff does not allege that any named Defendant in this case was involved with the confiscation and destruction of his legal property. Plaintiff does not even explain what state court appeal or case he was working on, when any legal filing was due and, that he had non-frivolous claims to present which required all of his legal property. Additionally, Plaintiff did not submit any evidence to show that any named Defendant was involved in storing some of his legal material after the shakedown and, to

show that he was unable to pursue a non-frivolous criminal appeal in any case due to not having his criminal evidence book.

Significantly, as Defendants point out, Plaintiff did not allege and did not present evidence that he suffered any actual injury to any criminal case or appeal due to the alleged confiscation and destruction of his legal property. Plaintiff's evidence only showed that he claimed he was working on an unidentified state case. The Supreme Court has held that the right to access to the courts obligates prison authorities to "assist inmates in the preparation and filing of meaningful legal papers ... ." *Lewis v. Casey*, 518 U.S. 343 (1996). As the Third Circuit Court stated in *Salkeld v. Tennis*, C.A. No. 07-1776, (3d Cir. 9-13-07), slip op. p. 3, 2007 WL 2682994, *1 (3d Cir. 2007) (Non-precedential):

> An inmate alleging a violation of *Bounds v. Smith*, 430 U.S. 817 (1977), must show an actual injury, a requirement that derives from the doctrine of standing. *Lewis v. Casey*, 518 U.S. 343, 349 (1969). Specifically, the inmate must show that the alleged shortcomings in the prison policy "hindered his efforts to pursue a legal claim." *Id.* at 351. *See also Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997) (no First Amendment right to subsidized mail). However, the injury requirement is not satisfied by just any type of frustrated legal claim; the legal claim must relate to a direct or collateral challenge to a prisoner's sentence and conditions of confinement. *Lewis*, 518 U.S. at 349 ("Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") (emphasis in original).

In *O'Connell v. Sobina*, 2008 WL 144199, *10 (2008 W.D. Pa.), the Court stated:

> In *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts,

> a party must identify all of the following in the complaint:
> 1) a non-frivolous, underlying claim; 2) the official acts
> frustrating the litigation; and 3) a remedy that may be awarded
> as recompense but that is not otherwise available in a future
> suit. *Christopher*, 536 U.S. at 415.

We find that Plaintiff has failed to state sufficient facts with respect to his First Amendment denial of access to the courts claim, and Plaintiff has not sufficiently alleged facts in satisfaction of the elements of such a claim as stated by the Court in *Christopher v. Harbury*. We also find that Plaintiff has failed to state that he has no other remedy available to compensate him for his criminal appeal. Thus, we find that the alleged conduct in Plaintiff's Complaint does not amount to a constitutional violation, namely, a denial of access to the courts claim, since Plaintiff does not state any actual injury, and since he failed to state that he lost any non-frivolous claim as a result to any conduct of Defendants. We also find that Plaintiff has not presented any to show that he suffered an actual injury to any court case due to the alleged taking of his criminal evidence book. "To prevail on [a denial of access to courts] claim, a Plaintiff must show that the denial of access caused actual injury; for instance, that he lost a 'nonfrivolous' and 'arguable' claim." *Agarwal v. Schuylkill County Tax Claim Bureau*, 442 Fed.Appx. 733, 737 (3d Cir. 2011)(citing *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179 (2002)). As stated, Plaintiff has not identified any such lost claim.

Based on Plaintiff's alleged facts stated above, we will recommend that Plaintiff's First Amendment denial of access to the courts claim be dismissed without prejudice. The Third Circuit Court of Appeals has held that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile."

*Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008)(citation omitted).  Further, the Third Circuit has "instructed that a district court must provide the plaintiff with this opportunity [to amend] even if the plaintiff does not seek leave to amend." *Id*.(citation omitted).  Thus, since it is not clear if our Plaintiff can establish the necessary elements with respect to his denial of access to courts claim consistent with *Christopher v. Harbury*, we will recommend that the Court allow Plaintiff to amend only this claim.  *See Piazza v. Lakkis*, 2012 WL 2007112, *8 (M.D. Pa. June 5, 2012).

We do not address Defendants' penultimate argument that they are entitled to qualified immunity as to all of Plaintiff's constitutional claims, since we find merit to Defendants' arguments raised in their Doc. 24 dispositive motion that no constitutional violations have been established in this case.[10]

---

[10]We note that "[i]f no constitutional violation occurred, the inquiry ends here and qualified immunity is appropriate."  *Gause v. Diguglielmo*, 2009 WL 116959, *2 (E.D.Pa. Jan. 15, 2009)(citations omitted).

**V.     RECOMMENDATION.**

Based on the above, it is respectfully recommended that Defendants' Motion to Dismiss and for Summary Judgment **(Doc. 24)** be **GRANTED** in its entirety with respect to all of Plaintiff's claims against all Defendant.  It is recommend that the Court grant Plaintiff leave to amend his Complaint only with respect to his First Amendment denial of access to courts claim.  It is also recommended that Plaintiff's Motion to amend his Complaint to add a new Defendant **(Doc. 39)** be **DENIED.** Further, it is recommended that Defendants' Motion to Stay the Court's decision regarding Plaintiff's Doc. 39 Motion **(Doc. 43)** be **DENIED as MOOT**.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: October 18, 2013**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


CLARENCE D. SCHREANE,      :     CIVIL ACTION NO. **3:CV-13-1057**
                            :
         Plaintiff      :
                            :     (Judge Caputo)
         v.         :
                            :     (Magistrate Judge Blewitt)
WARDEN JEFF THOMAS, *et al.*    :
                            :
                            :
         Defendants    :


## <u>NOTICE</u>


       **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 18, 2013.**

       Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis
of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objection to the foregoing Report and Recommendation may

constitute a waiver of any appellate rights.




**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**




**Dated: October 18 , 2013**