IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLARENCE D. SCHREANE, | : | CIVIL ACTION NO. **3:CV-13-1057** |
| | : | |
| Plaintiff | : | |
| | : | (Judge Caputo) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| WARDEN JEFF THOMAS, *et al.,* | : | |
| | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I.    BACKGROUND.

On April 23, 2013, Plaintiff, Clarence D. Schreane, a prisoner confined at USP-Lewisburg,

located in Lewisburg, Pennsylvania, filed, *pro se,* a *Bivens*[1] civil rights action, pursuant to 28 U.S.C.

§ 1331, in the United States District Court for the Middle District of Pennsylvania.  (Doc. 1).

Plaintiff also filed two Motions to proceed *in forma pauperis* because his first Motion was not on the

proper form.  (Docs. 2 & 5).  Plaintiff's Complaint raised procedural due process, Eighth

Amendment denial of medical care regarding kidney stones, and denial of access to the courts

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91
S.Ct. 1999 (1971).  Plaintiff's action  falls within 28 U.S.C. § 1331 ("The district courts shall
have original jurisdiction of <u>all</u> civil actions arising under the Constitution, laws or treaties of
the United States." (Emphasis added).
    As Plaintiff indicates, this is a *Bivens* action since he seeks monetary damages from federal
officials for alleged violations of his constitutional rights. *See Oriakhi v. Wood,* 2006 WL 859543, *
1, n. 1 (M.D. Pa.); *Conway v. Lindsay,* 2009 WL 1956282 (M.D. Pa.).  Plaintiff also indicates that he
is in the Special Management Unit ("SMU") at USP-Lewisburg.  (Doc. 29).
    We note that Plaintiff Schreane has filed at least two prior civil rights actions with
this Court, namely, Civil Nos. 10-1765 and 11-613, M.D. Pa.  These cases are closed.
Plaintiff also filed seven §2241 habeas petitions with this Court, Civil 13-1643, 13-2478,
13-3009, 13-3110, 14-246 (open), 14-719, and 14-1165 (open), all filed in M.D. Pa.

claims in violation of the United States Constitution.  (Doc. 1).  As relief, Plaintiff requested damages in the amount of five million dollars.  (*Id*.). Plaintiff sued all Defendants, who are employees of the U.S. Bureau of Prisons ("BOP") only in their individual capacities.

Plaintiff named the following 12 Defendants: Warden Jeff Thomas; Mr. Chambers, Disciplinary Hearing Officer ("DHO"); F. Entzel, Captain; Correctional Officer ("CO") Barbella; Ms. Heath, Special Investigation Agent ("SIA"); CO Shivery; Mr. Jordan, DHO; Mr. Brown, Health Services Administrator ("HSA"); CO R. Haines; Jeff Campbell, BOP Southeast Regional Office Attorney; unnamed BOP Administrative Remedy Coordinator, Southeast Regional Office; and Harrell Watts, Administrator for BOP National Inmate Appeals.

On May 7, 2013, the Court issued an Order and granted Plaintiff's Motions for Leave to Proceed *In Forma Pauperis* and directed service of Plaintiff's Complaint on Defendants.   (Doc. 8). The Summons was issued and the 11 named Defendants were served.  (Docs. 13-22).  Unnamed Defendant BOP Administrative Remedy Coordinator, Southeast Regional Office, was not initially served since Plaintiff failed to identify this Defendant.

On July 22, 2013, all 12 Defendants jointly filed a Motion to Dismiss and for Summary Judgment, pursuant to Fed.R.Civ.P. 12(b) and 56(b). **(**Doc. 24**)**.  Counsel for Defendants indicated in the Motion that Defendant unnamed BOP Administrative Remedy Coordinator, Southeast Regional Office  was Craig Simmons.

On August 14, 2013, Plaintiff filed a Motion to Appoint Counsel. (Doc. 29).  On August 21, 2013, we issued a Memorandum and Order denying Plaintiff's Motion to Appoint Counsel.  (Doc.

35).  Also, on September 12, 2013, Plaintiff filed a  Motion for Reconsideration of the Court's Doc.

35 Order denying his Motion to Appoint Counsel.  (Doc. 37).

Further, on September 18, 2013, Plaintiff filed a Motion to amend his Complaint to add a

new Defendant, *i.e.*, CO Fleeger,  to his Complaint.  (Doc. 39).  On October 4, 2013, Defendants

filed a Motion to Stay the Court's decision regarding  Plaintiff's Doc. 39 Motion to amend his

Complaint to add a new Defendant to his Complaint and, to grant them a 14-day extension of time

to file their opposition brief after Congress has restored the lapse of appropriations in the funding

for the Department of Justice.  (Doc. 43).  On September 23, 2013, we issued a Memorandum and

Order denying Plaintiff's  Motion for Reconsideration of the Court's Doc. 35 Order denying his

Motion to Appoint Counsel.  (Doc. 40).

On October 18, 2013, we issued an  Report and Recommendation ("R&R") regarding

Defendants jointly filed Motion to Dismiss and for Summary Judgment, pursuant to Fed.R.Civ.P.

12(b) and 56(b) and recommended the following:

> Based on the above, it is respectfully recommended that Defendants' Motion
> to Dismiss and for Summary Judgment **(Doc. 24)** be **GRANTED** in its entirety
> with respect to all of Plaintiff's claims against all Defendants.  It is
> recommended that the Court grant Plaintiff leave to amend his Complaint
> only with respect to his First Amendment denial of access to courts claim.  It is
> also recommended that Plaintiff's Motion to amend his Complaint to add a
> new Defendant **(Doc. 39)** be **DENIED.**  Further, it is recommended that
> Defendants' Motion to Stay the Court's decision regarding Plaintiff's Doc. 39
> Motion **(Doc. 43)** be **DENIED as MOOT**.

(Doc. 44).

On December 6, 2013, the Court adopted our R&R in its entirety.  (Doc. 52).  On January

10, 2014, the Court vacated the December 6, 2013 Order (Doc. 52) and allowed Plaintiff until

3

January 31, 2014 to file Objections to the R&R.  (Doc. 56).  On February 20, 2014, Plaintiff filed

Objections to the Report and Recommendation and a Motion to Appoint Counsel.  (Docs. 62 &

63).

On May 6, 2014, the Court filed a Memorandum and Order as Ordering follows:

(1)     The Report and Recommendation (Doc. 44) is **ADOPTED** as Follows:

    (A)     Defendants' Motion to Dismiss and for Summary Judgment (Doc. 24) is **GRANTED.**

    (B)     Plaintiff's claims against the currently named Defendants are **DISMISSED**.

    (C)     Plaintiff has **twenty-eight (28) days** from the date of entry of this Order to file an amended complaint stating a First Amendment denial of access to the courts claim against the currently named Defendants.

(2)     Plaintiff may seek leave to amend his pleading to assert claims against individuals not named as Defendants in this action within **twenty-eight (28) days** from the date of entry of this Order.

(3)     Plaintiff's Motion to Amend his Complaint to add a New Defendant (Doc. 39) is DENIED.

(4)     Defendants' Motion to Stay (Doc. 43) is **DENIED as moot**.

(5)     The matter is **RECOMMITTED** to Magistrate Judge Blewitt for further proceedings.

(Doc. 75).

On June 17, 2014, Plaintiff filed a thirteen (13) page Amended Complaint.  (Doc.

81).  Plaintiff also attached ninety-two (2) pages of exhibits to his Amended Complaint.

(*Id.*).  We will now screen Plaintiff's Amended Complaint, **Document 81**, as we are

required to do by the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915.

## II.     STANDARDS OF REVIEW.

### A.     *PLRA*

The Prison Litigation Reform Act of 1995[2] (the "PLRA")obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  Specifically, § 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

The Court uses the same standard to screen a complaint under the PLRA as it does for a Rule 12(b)(6) motion to dismiss. *See Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

### B.     *MOTION TO DISMISS STANDARD*

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly*,

---

[2]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the

factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* *Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir.

Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

C.     *BIVENS*

A *Bivens* civil rights action under § 1331 has the same standards as does a § 1983 civil rights action.  In *Naranjo v. Martinez*, 2009 WL 4268598, *6 (M.D. Pa.), the Court stated:

> *Bivens* creates no substantive rights, but rather allows "a citizen suffering a compensable injury to a constitutionally protected interest [to] invoke the general federal-question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). A civil rights claim brought under Bivens is the federal counterpart to an action brought under 42 U.S.C. § 1983, and the same legal principles governing a § 1983 claim apply to a *Bivens* claim.  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir.2001); *Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir.1975); *Cyrus v. Hogsten*, No. 06-2265, 2007 WL 88745, at *3 (M.D.Pa. Jan.9, 2007). To state a claim under *Bivens*, the plaintiff must show that the defendant, acting under color of Federal law, deprived him of a right secured by the Constitution or laws of the United States. *Brown*, 250 F.3d at 800; *Cyrus*, 2007 WL 88745, at *3.
>
> Civil rights claims may only be brought against "persons." 42 U.S.C. § 1983. Individual liability in a civil rights action is personal in nature, and a defendant is liable only if he was personally, affirmatively involved in the alleged malfeasance. *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005); *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir.1997), abrogated in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (citing *Rhode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988). Further, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009) (collecting cases).

*See also Latansio v. Sabol*, 2010 WL 4340394, *2-*3.

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*.  *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976).  It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Sutton v. Rasheed*, 323 F.3d 236, 249-250 (3d Cir. 2003).  Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based.  *Id.*  As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement
> in the alleged wrongs . . . . [P]ersonal involvement can be shown
> through allegations of personal direction or of actual knowledge and
> acquiescence.  Allegations of participation or actual knowledge
> and acquiescence, however, must be made with appropriate
> particularity. (Citations omitted).

*See also Fisher v. Matthews,* 792 F.Supp.2d 745, 2011 WL 1982920, * 23 (M.D. Pa. 2011) *(citing Rode, supra).*

## III.    AMENDED COMPLAINT ALLEGATIONS.  (DOC. 81).

Plaintiff titles his Amended Complaint, "First Amendment Denial of Access to Court." (Doc. 81).  However, In his Amended Complaint, Plaintiff raises a First Amendment denial of access to the courts claim, First Amendment Retaliation claim, Fourth Amendment unlawful seizure claim and Fifth Amendment due process claim. (Doc. 81, p. 4).  We will review the Amended Complaint as per the Court's May 6, 2014 Order limiting the Plaintiff's Amended Complaint to a First Amendment denial of access to the courts claim against the currently

named Defendants.  (Doc. 75).  Plaintiff did not file Motion to join additional Defendants.

Thus, we will not consider any new Defendants.  (*Id.*).  Plaintiff's Amended Complaint is

difficult to follow at best.  Plaintiff's Amended Complaint intertwines arguments regarding

the summary judgment motion previously ruled on by the Court and raises the previously

dismissed claims.  (*Id.*).  Plaintiff states, "Plaintiff Mr. Schreane, is prejudice by the Magistrate

Judge Blewitt, abuse of discretion, and by the unbalance scales of fundamental fairness, in

recognition of Mr. Schreane Complaint,...".  (Doc. 81, p. 2).  Thus, again, as stated, we will

review Plaintiff's Amended Complaint solely in regard to the First Amendment denial of

access to courts claim.

Plaintiff states that he has been repeatedly retaliated against and denied his legal tools

and material related to his "non-frivolous" appeal.  (Doc. 81, p. 6).  Plaintiff states that on

September 10, 2012, USP-Lewisburg underwent a mass shakedown wherein a cell search

was completed of every cell at USP-Lewisburg where prisoners were assigned.  (*Id.*). Plaintiff

states further that at the time of the search, he was working on his state appeal using his

criminal evidence paperback book and his Black's Law Dictionary.  (*Id.*).  Plaintiff alleges that

within earshot of his cell, staff stated that he was a filer.  (*Id.*).  When Plaintiff returned to his

segregated cell, his legal property was confiscated and "it is a matter of record that 36"

inches of Mr. Schreane[sic] property was taken from his cell..."  (*Id.*).  Plaintiff goes on to

state:

> A terrible but <u>common consequence</u> of <u>Prisoner activism</u> is <u>harassment</u> by
> <u>prison official, officials have been known to block the preparation and
> filing</u> of lawsuit, refuse to <u>mail legal papers take away legal research</u>

material and deny access to law books, all in an attempt to stop the public from knowing about Prisoners issues/complaints.

(*Id.*).

Plaintiff states that he has a "real case" in the State of Tennessee and that he is being deprived of his legal books and the BOP does not provide state law to prisoners in its custody and case. (*Id.*). Plaintiff discusses the concept of "actual injury" in his Amended Complaint and states that a non-frivolous appeal was denied due to the confiscation of his legal materials. (*Id.*, pp. 7-8). Plaintiff further includes incidents which occurred after the date of filing of his Complaint (April 23, 2013) in this matter, thus, we will not review those allegations herein. Plaintiff does not include a section in his Complaint requesting any specific relief other than a "trial by jury, in recognition of his Seventh Amendment." Doc. 81, p.13).

**IV.    DISCUSSION**.

First, as noted, Plaintiff did not seek leave to join additional Defendants in his Amended Complaint, thus, we must review Plaintiff's First Amendment denial of access to courts claim in regard to the original twelve (12) Defendants named in his Complaint. (Doc. 1). As to specific Defendants, BOP supervisory officials Watts, Campbell and Simmons, we recommend that they be dismissed for lack of personal jurisdiction since these three Defendants did not have sufficient contacts with Pennsylvania. Plaintiff named Watts, Campbell and Simmons as Defendants based on *respondeat superior*. Further, USP-Lewisburg Warden Thomas cannot be held liable in this case based on *respondent superior*. Additionally, simply because Defendants Thomas, Simmons and Watts denied Plaintiff's

appeals of his Administrative Remedies is not sufficient to hold these Defendants liable in this action.  As was raised in the Defendants' Motion to Dismiss and/or for Summary Judgment which was previously adjudicated by the Court, Defendant Jeff Campbell was the BOP Southeast Regional Office Attorney and was employed in FCC-Coleman, Florida, from October 19, 2003, until his retirement on May 31, 2012.  (Doc. 34, ¶115).  Craig Simmons was the BOP Administrative Remedy Coordinator, Southeast Regional Office, Atlanta, Georgia.  Harrell Watts is the  Administrator for BOP National Inmate Appeals in the Central Office located in Washington, D.C.  Thomas is the USP-Lewisburg Warden.  First, Defendants Simmons, Campbell and Watts should be dismissed since Plaintiff's allegations against them regarding decisions they made outside of Pennsylvania concerning Plaintiff's appeals of his BOP administrative remedies are not sufficient contacts to establish personal jurisdiction over them, thus, we find that Plaintiff has failed to state a cognizable claim against these three Defendants.  Furthermore, Plaintiff has not specifically named these Defendants in regard to First Amendment denial of access to courts claim.

Furthermore, it is well-established that inmates do not have a constitutionally protected right to a prison grievance system.  *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 137-38, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *see also Flick v. Alba,* 932 F.2d 728, 729 (8th Cir.1991) (ruling that federal grievance regulations providing administrative remedy procedure do not create liberty interest in access to that procedure). It is further well-settled that officials handling of prison grievance procedures does not equate to personal liability in a civil rights claim.  *Burnside v. Moser*, Civil No. 04-2485, 12-

16-04 Order, p. 3, J. Muir, M.D. Pa., aff'd. 138 Fed. Appx. 414 (3d Cir. 2005); *see also*

*Mitchell v. Dodrill*, 696 F.Supp.2d 454, 469 (M.D. Pa. 2010).

This Court has also recognized that grievance procedures are not constitutionally

mandated.  *See Chimenti v. Kimber*, Civil No. 3:CV-01-0273, slip op. at p. 18 n. 8 (March

15, 2002) (Vanaskie, C.J.), reversed in part, C.A. No. 03-2056 (3d Cir. June 8, 2005)(Non-

Precedential).  Even if the prison provides for a grievance procedure, as USP-Lewisburg and

the BOP do, violations of those procedures do not amount to a civil rights cause of action.

*Mann v. Adams*, 855 F. 2d 639, 640 (9th Cir 1988), *cert denied*, 488 U.S. 898 (1988);

*Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del. 1995), aff'd. 74 F. 3d 1226 (3d Cir.

1995); *see also Burnside v. Moser*, *supra* (Even "[i]f the state elects to provide a grievance

mechanism, violations of its procedures do not ... give rise to a [constitutional] claim.")

(citations omitted).  Thus, even if the prison official allegedly failed to process the prisoner's

grievances, no constitutional claim is stated.  *Burnside, supra.  See also Mincy v.*

*Chmieleweski*, 2007 WL 707344,*9, n. 4(M.D. Pa.) (claims by inmates regarding the prison

grievance procedures are unavailing since "prisoners do not have a constitutional right to

prison grievance procedures.")(citations omitted).

Further, we find that Plaintiff only avers the involvement of Defendants Thomas,

Simmons, Campbell and Watts through their BOP positions and based on the doctrine of

*respondent superior*.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to
> constitutional claims. *See Ashcroft v. Iqbal*, --- U.S. ----, ----, 129

12

S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior*) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have  been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326 F. App'x 97, 101 (3d Cir.2009) (per curiam) (non-precedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10).

The Court in *Rogers,* 696 F.Supp.2d at 488, repeated the personal involvement necessary in civil rights action, and stated:

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. *Chinchello v. Fenton,* 805 F.2d 126, 133 (3d Cir.1986). Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *Id. quoting Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir.1990), *cert. denied,* 501 U.S. 1218, 111 S.Ct. 2827, 115 L.Ed.2d 997 (1991). The supervisor must be personally involved in the alleged misconduct. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988). Section 1983 [or 1331] liability cannot be predicated solely on *respondeat superior. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *see also Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1293-

13

> 1295 (3d Cir.1997) (to hold police chief liable under § 1983 [or1331]
> for violating female subordinate officer's rights, she was required to
> prove that he personally participated in violating the her rights, that he
> directed others to violate her rights, or that he had knowledge of and
> acquiesced in his subordinates' violations). If a grievance official's only
> involvement is investigating and/or ruling on an inmate's grievance after
> the incident giving rise to the grievance has already occurred, there is
> no personal involvement on the part of that official. *Rode,* 845 F.2d at
> 1208; *Cooper v. Beard,* 2006 WL 3208783 at *14 (E.D.Pa. Nov. 2,
> 2006).

Based on the above, with regard to Thomas, Simmons, Campbell and Watts, these

Defendants lacked the requisite personal involvement with regard to Plaintiff's constitutional claim.

Plaintiff does  not allege any wrongdoing by these four (4) Defendants other than based on

*respondeat superior*.   Thus, we recommend that Defendants Thomas, Simmons, Campbell and

Watts be dismissed from this action with prejudice.

Next, the personal involvement is lacking as to Defendants CO Barbella, SIA Heath, Captain

Entzel and Defendant Chambers.  Plaintiff named CO Barbella as a Defendant since Plaintiff alleged

in his Complaint that Barbella wrote an Incident Report (No. 2194622) on August 5, 2011, charging

him with possession of a weapon (Code 104) when a razor blade was found in Plaintiff's cell after a

shakedown.  (Doc. 1).  Defendant DHO Chambers found Plaintiff and his cell mate guilty of

Incident Report No. 2194622 regarding possession of the razor blade.  (*Id*.).  Plaintiff does not

allege that Defendants  Barbella or Chambers had any involvement with his First Amendment

access to courts claim.  (Doc. 81).  Plaintiff failed to specifically mention Defendant SIA (Special

Investigative Agent) Heath in his Amended Complaint, thus, there is insufficient personal

involvement with Plaintiff's claims.

As noted, in the Amended Complaint, Plaintiff alleges that on September 10, 2012, there as a mass shakedown at USP-Lewisburg and after he was escorted out of his segregated cell to a holding cell in the shower area, some of his legal books and his Black's law dictionary were destroyed and confiscated by unnamed prison staff.  (Doc. 81).  Plaintiff avers that this conduct denied him access to the courts since he was not able to work on his appeal of his state court conviction.  Plaintiff alleges that he requested surveillance video tape be reviewed to determine what staff members went into his cell and took his legal property.  Plaintiff states that he filed an Administrative Remedy and that the responses by the Defendant Captain Entzel and Defendant Warden Thomas was that his cell was not involved in the shakedown and was not searched.  Again, Plaintiff's allegations are lacking as Defendant Captain Entzel did not have the required personal involvement with respect to Plaintiff's First Amendment constitutional claim against him.

Finally, Plaintiff failed to state a cognizable First Amendment denial of access to courts claim against the remaining Defendants Correctional Officers Shivery and R. Haines, DHO Jordan and Health Care Supervisor Brown.  As stated above, Plaintiff alleges in his Complaint that on September 10, 2012, there as a mass shakedown at USP-Lewisburg and that when he was escorted out of his segregated cell to a holding cell in the shower area, some of his legal materials and books (such as a paperback criminal evidence book) as well as his Black's law dictionary were confiscated and moved to storage or destroyed, in part, by unnamed prison staff. Plaintiff avers that this conduct denied him access to the courts since he was not able to continue working on his appeal of his state court conviction.  In fact, in his September 18, 2012 "Correspondence to Staff" which Plaintiff has attached to his Amended Complaint, Plaintiff simply requested the return of his

criminal evidence book since he was "current[ly] working on state case." (Doc. 81, p. 16). A response on the bottom of Plaintiff 's Correspondence advised Plaintiff to contact the lieutenant in his Unit or the captain. Plaintiff fails to name of any particular Defendant in his claim.

Plaintiff has failed to establish a First Amendment denial of access to courts claim. Plaintiff's Amended Complaint is devoid of sufficient facts that he was unable to pursue any non-frivolous criminal appeal due to not having his legal property. Plaintiff did not further allege that he could no longer pursue any criminal appeal without his confiscated or destroyed legal property. Further, Plaintiff does not allege that any named Defendant in this case was involved with the confiscation and destruction of his legal property. Plaintiff does not even explain what state court appeal or case he was working on, when any legal filing was due and, that he had non-frivolous claims to present which required all of his legal property. Furthermore, Plaintiff did not allege and did not present evidence that he suffered any actual injury to any criminal case or appeal due to the alleged confiscation and destruction of his legal property. Plaintiff's allegations state that he was working on an unidentified state case. The Supreme Court has held that the right to access to the courts obligates prison authorities to "assist inmates in the preparation and filing of  meaningful legal papers ... ." *Lewis v. Casey*, 518 U.S. 343 (1996).   As the Third Circuit Court stated in *Salkeld v. Tennis*, C.A. No. 07-1776, (3d Cir. 9-13-07), slip op. p. 3, 2007 WL 2682994, *1 (3d Cir. 2007) (Non-precedential):

> An inmate alleging a violation of *Bounds v. Smith*, 430 U.S. 817 (1977),
> must show an actual injury, a requirement that derives from the
> doctrine of standing.  *Lewis v. Casey*, 518 U.S. 343, 349 (1969).
> Specifically, the inmate must show that the alleged shortcomings in
> the prison policy "hindered his efforts to pursue a legal claim." *Id.*
> at 351.  *See also Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997)

(no First Amendment right to subsidized mail).  However, the injury requirement is not satisfied by just any type of frustrated legal claim; the legal claim must relate to a direct or collateral challenge to a prisoner's sentence and conditions of confinement.  *Lewis*, 518 U.S. at 349 ("Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") (emphasis in original).

In *O'Connell v. Sobina*, 2008 WL 144199, *10 (2008 W.D. Pa.), the Court stated:

> In *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts.  Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit.  *Christopher*, 536 U.S. at 415.

We find that Plaintiff has failed to state sufficient facts with respect to his First Amendment denial of access to the courts claim, and Plaintiff has not sufficiently alleged facts in satisfaction of the elements of such a claim as stated by the Court in *Christopher v.  Harbury*.  We also find that Plaintiff has failed to state that he has no other remedy available to compensate him for his criminal appeal. Thus, we find that the alleged conduct in Plaintiff's Amended Complaint  does not amount to a constitutional violation, namely, a denial of access to the courts claim, since Plaintiff does not state any actual injury, and since he failed to  state that he lost any non-frivolous claim as a result to any conduct of Defendants.  We also find that Plaintiff has not presented any to show that he suffered an actual injury to any court case due to the alleged taking of his criminal evidence book. "To prevail on [a denial of access to courts] claim, a Plaintiff must show that the denial of access

caused actual injury; for instance, that he lost a 'nonfrivolous' and 'arguable' claim." *Agarwal v. Schuylkill County Tax Claim Bureau*, 442 Fed.Appx. 733, 737 (3d Cir. 2011)(citing *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179 (2002)).  As stated, Plaintiff  has not identified any such lost claim.

Based on Plaintiff's alleged facts stated above, we will recommend that Plaintiff's First Amendment denial of access to the courts claim be dismissed with prejudice as Plaintiff was given the opportunity to amend his claim.

**V.      RECOMMENDATION.**

Based on the above, it is respectfully recommended that the Court **DISMISS WITH PREJUDICE** Plaintiff's **Document 81** Amended Complaint and close this case.


s/ Thomas M. Blewitt 
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: June 30, 2014**

18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CLARENCE D. SCHREANE,                :        CIVIL ACTION NO. **3:CV-13-1057**
                                                           :
                        Plaintiff                          :
                                                           :        (Judge Caputo)
                        v.                                 :
                                                           :        (Magistrate Judge Blewitt)
WARDEN JEFF THOMAS, *et al.*          :
                                                           :
                                                           :
                        Defendants                         :

## <u>NOTICE</u>

      **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 30 2014.**

      Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall
witnesses or recommit the matter to the magistrate judge with
instructions.

Failure to file timely objection to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 30, 2014**